## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW FULLMAN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-0682** |
| | : | |
| **CITY OF PHILADELPHIA, *et al.*,** | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**BEETLESTONE, C.J.**                                                      **October 2 , 2025**

Plaintiff Andrew Fullman filed this *pro se* civil action asserting violations of his civil

rights and discriminatory parking practices.  (Compl. (ECF No. 2) at 1.)  Named as Defendants

are the City of Philadelphia, Philadelphia Parking Authority ("PPA"), Bureau of Administrative

Adjudication ("BAA"), Steven C. Boc, identified as an attorney for the PPA, Joseph McCarthy,

identified as an employee at the PPA; John Doe #1, identified as a City of Philadelphia

employee, and Philadelphia Police Department ("PPD") Officers, John Does #2-6.  (*Id.* at 1-2.)

For the following reasons, the Court grants Fullman's request to proceed *in forma pauperis*[1] and

dismisses the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] The Court previously denied Fullman leave to proceed *in forma pauperis*.  However, following
Fullman's appeals to the United States Court of Appeals for the Third Circuit, that Court vacated
this Court's prior orders denying him *in forma pauperis* status, and remanded this matter with the
direction that the Court grant Fullman *in forma pauperis* and proceed to screening Fullman's
Complaint pursuant to 28 U.S.C. § 1915(e).  *See Fullman v. City of Philadelphia*, No. 24-1473,
2025 WL 2630729, at *2 (3d Cir. Sept. 12, 2025) (*per curiam*).

I.    **FACTUAL ALLEGATIONS**[2]

Fullman maintains that he has been denied access to handicapped parking and has been

harassed and discriminated against by Defendants in retaliation for his parking complaints and

for his membership in protected classes based on age, color, disability, and race.[3]  (Compl. at 1.)

Fullman alleges that he pays an annual fee to park in Zone 10, but "most of the time there is no

available parking due to the negligence" of the City, PPA, and BAA.  (*Id.* at 5.)  He avers that

there are numerous vehicles parked illegally in Zone 10 and the PPA has only recently begun

issuing parking citations.  (*Id.*)  He claims that the unavailable parking in Zone 10 has caused

him to spend additional money to park elsewhere and he's "had to pay hundreds of dollars due to

receiving harassing invalid parking citations and wrongful towing of his vehicle."  (*Id.*)  Fullman

does not include any factual allegations as to where or why his vehicle was towed on that

occasion.

Fullman avers that the PPA and the PPD have issued him at least nine "invalid" parking

tickets between 2019 and 2022.[4]  (*Id.* at 3-4, 6.)  He alleges throughout his Complaint that the

PPA "knowingly, intentionally and wrongfully issued . . . harassing invalid parking ticket[s] . . .

for retaliatory and discriminatory reasons" even though he "paid the PPA Kiosk machine" or

---

[2] The facts set forth in this Memorandum are taken from the Complaint (ECF No. 2).  The Court
adopts the pagination assigned to the Complaint by the CM/ECF docketing system.  Spelling,
punctuation, and capitalization errors are cleaned up where necessary.

[3] Although Fullman contends that he was discriminated against based on his age, he does not
state his age or discuss his age any further.  Accordingly, any claims based on age discrimination
will be dismissed.

[4] Fullman alleges that he was issued "invalid parking tickets" by the PPA on February 18, 2019,
October 12, 2019, October 19, 2019, March 7, 2020, October 26, 2020, November 13, 2020,
September 10, 2021, and June 7, 2022.  (Compl. at 3-4, 6.)  On December 18, 2020, the PPD
issued him a parking ticket, but he avers that the PPA "knowingly, intentionally, and
wrongfully" allowed the "invalid parking ticket" to proceed.  (*Id.* at 3.)

"legally parked in a reserved handicap parking area with his handicap parking placard . . . visible."[5]  (*Id.*)  Fullman contends that "PPA is aware of their faulty scanning device which continues to time a vehicle after the vehicle leaves," and he claims that the parking tickets were issued with the intent to harass him and "make him spend money and time contesting the parking ticket[s]."  (*Id.* at 3-4, 6.)  Fullman contends that these tickets were later dismissed in his favor, but the City, PPA, and BAA "allowed the harassing invalid tickets to continue for retaliatory reasons and because of [his] race (black)."  (*Id.*)  He avers that he reported the "discriminatory parking practices to Defendants, PPA and BAA, which was to no avail."  (*Id.* at 4.)  Fullman alleges that because of "so many harassing and expensive invalid parking citations," he "requested a reasonable accommodation to be able to park closer to his place of residence" – presumably a request to designate a handicap parking space – but he was unsuccessful.  (*Id.*)

Fullman cites numerous instances in his Complaint contending that he was denied access to handicap parking because a driver "knowingly parked" their vehicle in a handicap parking area even though the vehicle did not display a handicap placard or a plate. [6]  (*Id.* at 5-7, 9-11.) Fullman avers that in all these instances, he reported the parking violation to PPA, but the PPA did not issue a parking violation or tow the offending vehicle.  (*Id.*)  He alleges that in several cases, the "PPA parking enforcement officer" did not request that the driver move the vehicle, but, instead, permitted the driver to stay, continuing to block Fullman's access to the handicap

---

[5] Fullman also avers that on November 18, 2020, a PPA parking enforcement officer "knowingly and wrongfully issued [an] invalid parking ticket," despite "a handicap placard visibly hanging in the windshield" of his car.  (Compl. at 4.)  He claims that the PPA tow truck driver "rightfully refused" to tow his car and "PPA immediately voided the harassing invalid parking ticket."  (*Id.*)

[6] Specifically, Fullman indicates that he observed these vehicles on January 20, 2022, August 15, 2022, October 7, 2023, October 22, 2023, October 24, 2023, November 15, 2023, November 19, 2023, December 25, 2023, and February 10, 2024.  (Compl. at 5-7, 9-11.)

parking area. (*Id.* at 5, 9-10.) Fullman contends that the unidentified parking enforcement officers "violated state, local, and federal law in failing and refusing to issue" parking tickets for illegally parked vehicles. (*Id.* at 7.) Although it is apparent from the allegations of the Complaint that Fullman did not directly observe every driver that allegedly parked in a handicapped area,[7] he nonetheless maintains that none of them were disabled or members of his protected class. (*Id.* at 5-7, 9-11.) Fullman maintains that each of these drivers were treated differently, and more favorably than him, which he avers constitutes discrimination. (*Id.*)

In addition to the foregoing, Fullman alleges that from May 8, 2022 through August 19, 2023, he observed five different police vehicles and an additional City-owned non-police vehicle parked in handicap parking areas even though the vehicles did not display a handicap placard or plate. (*Id.* at 6-8.) Fullman has named the unidentified drivers of these vehicles as Defendants. (*Id.* at 2.) On May 8, 2022, Fullman observed a parked City vehicle, allegedly driven by Defendant John Doe #1, in a handicap parking area at 1000 Filbert Street in Philadelphia. (*Id.* at 6.) A female PPA parking enforcement officer told Fullman that she could not issue a parking violation or tow a City vehicle. (*Id.*) The same City vehicle was allegedly spotted by Fullman on September 10, 2023 in a different handicap parking area. (*Id.* at 8.) Fullman did not observe the driver of the City vehicle on either occasion, but he nonetheless argues that the driver was treated differently and more favorably than him because of his race and disability. (*Id.* at 6, 8.) No parking citations were issued. (*Id.*)

On July 7, 2022, Fullman observed "Philadelphia Police Patrol Car #624," allegedly driven by Defendant P/O John Doe #2, parked in the handicap parking area at a Wawa

---

[7] Rather than allege the race and status of these individuals, Fullman repeatedly asserts that he will learn the "race and status" of several drivers during discovery. (Compl. at 7-9.)

convenience store.  (*Id.* at 6.)  Fullman had to drive around" until he could find parking.  (*Id.*)

On August 26, 2022, Fullman observed "Philadelphia Police Patrol Van #900" in a handicap

parking area at a Rite Aid Pharmacy while he "was trying to find parking to pick up his life-

sustaining medication."  (*Id.* at 7.)  Fullman alleges that this police van was driven by Defendant

P/O John Doe #3.  (*Id.*)  On September 25, 2022, Fullman observed "Philadelphia Police Patrol

Car #622," allegedly driven by Defendant P/O John Doe #4, parked in a handicap parking area at

a Wawa store.  (*Id.*)  On August 15, 2023, P/O John Doe #5 allegedly parked his personal vehicle

in a handicap parking area near Fullman's residence.  (*Id.* at 8.)  On August 19, 2023, P/O John

Doe #6 allegedly parked his personal vehicle in handicap parking in PPA's Parking Permit Zone

10.  (*Id.*)  Doe #6 placed a "Philadelphia Police Parking Permit in his vehicle's window" that

stated it was only valid for "6th District Business."  (*Id.*)  Fullman called the PPA, and a parking

enforcement officer was sent to the scene, but no citation was issued for Doe #6's vehicle.  (*Id.*)

Fullman contends that "Philadelphia Police have absolutely no respect to handicap

people."  (*Id.* at 7.)  He avers Defendant P/O John Does #2-6 were each aware that they were

"blocking access to a handicap parking area as a result of a PPD policy, practice, or custom,

and/or a deliberately indifferent failure to train, supervise, and discipline officers who engage in

such conduct."  (*Id.* at 6-8.)  Fullman took pictures of all the "illegally parked" police vehicles

and filed a "Citizen's Complaint" with respect to each, but no parking citations were issued.

(*Id.*)

Fullman also references a few more recent occurrences where someone "knowingly

parked in a handicap parking area" and was only given a parking citation even though their

vehicle was parked in a "tow away zone."  (*Id.* at 10-11.)  On February 1, 2024, Fullman called

the PPA on two separate occasions to report a vehicle parked in a handicap area, and even

though a parking citation was issued for each of the vehicles, Fullman contends that "the Asian driver[s] [were] treated differently, better, and more favorably" than Fullman because of Fullman's race and disability.  (*Id.*)  Fullman contends that his car was previously "targeted" by the PPA and towed from the same handicap parking space on a different day.  (*Id.* at 10.)  Fullman asserts that on February 2, 2024, a vehicle parked in a handicap area "was only given a parking citation, but the vehicle was not towed like [Fullman's] car was.  (*Id.* at 11.)  Again, Fullman alleges that the "believed to be Asian driver . . . was treated differently, better, and more favorably than [Fullman]."  (*Id.*)  Finally, on February 9, 2024, Fullman called the PPA about a sedan parked in a handicap parking area and although a parking citation was issued, the sedan was not towed.  (*Id.*)  Fullman claims that this driver, whom he does not identify, was treated better than him.  (*Id.*)

Fullman avers that he has sent Defendant Joseph McCarthy "numerous letters and complaints" regarding "ongoing discriminatory parking practices, discrimination, harassment and retaliatory action, which was to no avail."  (*Id.* at 11.)  He generally contends that complaints "about invalid parking citations, discrimination, harassment, and retaliation for parking in reserved handicap areas is activity protected by the Constitution," and he claims that "the harassment, discrimination, and retaliation toward [him]" got much worse after sending "numerous complaints."  (*Id.* at 1, 11.)  Fullman also avers that he sent a "Cease-and-Desist Letter" to the BAA on January 23, 2023 "after he was repeatedly harassed and threatened that his car would be added to the boot towing list" if he failed to immediately pay a parking ticket.  (*Id.* at 7.)

Fullman asserts that the City, PPA, and BAA have allowed the "harassing invalid parking tickets to continue because of [his] race and ADA Complaints."  (*Id.* at 3.)  Fullman contends

that the City has "supported the violation of [his] right to handicap parking and fair hearing."
(*Id.*)  He also avers that the City is "responsible for the violations of [his] constitutional rights
because the individual Defendants' actions resulted from the City's deliberate indifference to a
custom pattern, practice, or policy of allowing PPA employees to retaliate against individuals for
their expressive conduct in reporting employees undertaking their official duties, by, among
other things, unlawfully issuing invalid parking tickets and/or a deliberately indifferent failure to
train, supervise, and discipline parking enforcement officers who engage in such conduct."  (*Id.*)

As relief for his claims, Fullman seeks monetary damages in excess of $500,000 and a
declaratory judgment indicating that the Defendants have violated his Fifth and Fourteenth
Amendment rights as well as his "protected constitutional rights."[8]  (*Id.* at 14.)

## II.    STANDARD OF REVIEW

The Court grants Fullman leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C.
§ 1915(e)(2)(B)(ii) requires the Court to dismiss Fullman's Complaint if it fails to state a claim.
Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same
standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*
*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to
determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

---

[8] Fullman's request for declaratory relief is improper because declaratory relief is unavailable to
adjudicate past conduct.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per
curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also
not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin.
Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments
are meant to define the legal rights and obligations of the parties in the anticipation of some
future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is
liable to another."  *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-
3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is
available to define the legal rights of the parties, not to adjudicate past conduct where there is no
threat of continuing harm.").

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As Fullman is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules – they must abide by the same rules that apply to all other litigants." *Id.*

## III.    DISCUSSION

Fullman's allegations are repetitive and conclusory.[9] Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing

---

[9] The Court notes that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." *Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).

that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Additionally, each allegation

must be "simple, concise and direct." *See DiGenova v. Unite Here Local 274*, 673 F. App'x 258,

260 (3d Cir. 2016) (*per curiam*) (citing Fed. R. Civ. P. 8(d)(1)). *See* Fed. R. Civ. P. 8(d)(1).

"Taken together," Rules 8(a) and (d)(1), "underscore the emphasis placed on clarity and brevity

by the federal pleadings rules." *See Talley v. Harper*, No. 14-1411, 2017 WL 413069, at *2

(W.D. Pa. Jan. 31, 2017) (citing *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996)).

Much of Fullman's Complaint is nothing more than conclusory recitations of legal verbiage.[10]

Liberally construing the Complaint, the Court understands Fullman to be asserting that his due

process and equal protection rights have been violated, and he has suffered retaliation.

A.    **42 U.S.C. § 1981**

Fullman alleges discrimination and lists 42 U.S.C. § 1981 in the "Jurisdiction and Venue"

section of his Complaint. (Compl. at 1.) Because Fullman has sued state actors, § 1983 rather

than § 1981 governs his claims, meaning there is no plausible basis for a § 1981 claim here. *See*

*McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) (explaining that § 1983

provides "the exclusive remedy for violations of § 1981 by state actors"); *see also Goodall-*

---

[10] For example, Fullman alleges the following:

> Plaintiff aver[s] that Defendants, City of Philadelphia, PPA, BAA, and Boc,
> supported the violation of his constitutional rights, liberty, and equal protection by
> failing to dismiss the harassing invalid parking tickets and continuing to allow the
> PPA parking enforcement officers to issue Plaintiff harassing invalid parking
> tickets. Defendant City of Philadelphia is responsible for the violations of
> Plaintiffs constitutional rights because the individual Defendants' actions resulted
> from the City's deliberate indifference to a custom, pattern, practice, or policy of
> allowing City employees to retaliate against individuals for their expressive
> conduct in filing complaints alleging discrimination, discriminatory parking
> practices, and misconduct, among other things and/or a deliberately indifferent
> failure to train, supervise, and discipline officers who engage in such conduct.

(Compl. at 12.)

*Gaillard v. N.J. Dep't of Corr.*, 625 F. App'x 123, 128 (3d Cir. 2015) ("[A]s the District Court properly noted, § 1981 does not provide a private right of action against state actors."). Accordingly, the Court will dismiss any claims under 42 U.S.C. § 1981 with prejudice because Fullman has improperly relied on this inapplicable legal provision as a basis for his legal claims.

### B.    Americans with Disabilities Act ("ADA")

Fullman alleges that after receiving "so many harassing and expensive invalid parking citations," he "requested a reasonable accommodation to be able to park closer to his place of residence" but was unsuccessful.  (Compl. at 4.)  Fullman does not identify the Defendant to whom he made his request, nor does he allege when the request was made.  Because he used the term "reasonable accommodation," he may be attempting to raise a claim under the ADA.

The ADA "require[s] public entities[] . . . to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019).  To the extent Fullman seeks to state a claim under the ADA, he "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288-89 (footnote omitted).  The plaintiff "must also show intentional discrimination under a deliberate indifference standard [if] he seeks compensatory damages."[11] *Id.* at 289.

To allege that he is a "qualified individual with a disability," Fullman must assert that he has "a physical or mental impairment that substantially limits one or more major life activities."

---

[11] "To prove intentional discrimination, an ADA claimant must prove at least deliberate indifference, and to plead deliberate indifference, a claimant must allege (1) knowledge that a federally protected right is substantially likely to be violated and (2) failure to act despite that knowledge." *See Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018).

42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for

oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,

bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and

working." *Id.* at § 12101(2)(A). The 2008 ADA Amendments Act clarified that the definition of

disability and "substantially limits" should be construed "in favor of broad coverage of

individuals . . . to the maximum extent permitted." 42 U.S.C. § 12102(4)(A)-(B). However, "to

sufficiently allege that an impairment interferes with a major life activity, a plaintiff must

elaborate on whether the alleged impairment interfered with [his] alleged major life activity

during the period of alleged discrimination by Defendants," and "the plaintiff's allegations must

contain sufficient factual support for his or her purported limitations, such as describing in some

detail the frequency, duration, or severity of his or her limitations." *Earl v. Good Samaritan

Hosp. of Suffern NY*, 625 F. Supp. 3d 292, 304 (S.D.N.Y. 2022) (cleaned up), *aff'd*, No. 22-2505,

2023 WL 8708417 (2d Cir. Dec. 18, 2023).

Fullman has not stated a plausible ADA claim because he has not adequately alleged that

he suffers from a disability or that a public entity failed to accommodate any disability or

discriminated against him because of it. *See, e.g.*, *Brister v. Emp. Opportunity & Training Ctr.

of Ne. Pa. Inc*., No. 22-2047, 2023 WL 4424255, at *2 (M.D. Pa. July 10, 2023) (dismissing

ADA claim for failure to accommodate where plaintiff alleged only in conclusory fashion that

her employer failed to provide reasonable accommodations for her disability); *Cottrell v. Rowan

Univ.*, 786 F. Supp. 2d 851, 858 (D.N.J. 2011) ("Simply because a person is authorized by law to

park in a handicapped space does not mean he is 'disabled' in the context of an ADA . . .

discrimination claim."). Fullman's ADA claims will be dismissed without prejudice.

C.       **Claims Against the John Doe Defendants**

Fullman names a City employee, John Doe #1, and five PPD officers, P/O John Doe #2-

6, as Defendants, asserting that each of them denied him access to handicap parking by parking

in handicap parking areas even though their vehicles did not have a handicap placard or plate.

(Compl. at 6-8.)  He avers that these Defendants, as City employees, "were not allowed to violate

departmental or municipal policies, procedures, state and federal laws," and he contends that

their actions resulted "from the City's deliberate indifference to a custom, pattern, practice, or

policy of allowing officers and PPA employees to harass, retaliate, and discriminate against

minority individuals who legally park in reserved handicap parking areas."  (*Id.* at 14.)

The basis for Fullman's non-constitutional claims, if any, against these individuals is

unclear.  To the extent Fullman alleges that these unknown individuals have somehow denied

him access to handicapped parking areas, Title II of the ADA does not provide for individual

liability.[12]  *See Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per*

*curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for

the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d

Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of

those circuits which have concluded that there is no individual damages liability under Title II of

the ADA, which provides an additional basis to affirm the dismissal of this claim."); *see also*

*Boggi v. Med. Review & Accrediting Council*, 415 F. App'x 411, 414-15 (3d Cir. 2011) (*per*

*curiam*) (holding that plaintiff failed to state a viable ADA claim against any of the "non-entity

defendants" that were sued in their individual capacities).  Accordingly, to the extent Fullman

---

[12] This analysis assumes that Fullman would be entitled to the protections of the ADA.

asserts ADA claims against the individual Defendants, any such claims will be dismissed with prejudice.

Moreover, to the extent Fullman seeks the issuance of parking citations based on his observations that these Defendants were parked illegally, the Court has no authority to order such relief. *See Kent v. Ed Carber Inc.*, 467 F. App'x 112, 113 (3d Cir. 2012) (*per curiam*) (affirming dismissal of claims seeking initiation of criminal charges because "a private person does not have a 'judicially cognizable interest in the prosecution . . . of another'") (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *Grabowsky v. Borough of Whitehall*, 241 A.3d 691 (Pa. Commw. Ct. 2020) (property owner who sought the issuance of citations to neighbors for alleged violations of borough ordinances had no right to dictate the method of enforcement).

### D.    Constitutional Claims

Fullman also asserts constitutional claims. The mechanism by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). As set forth below, Fullman has failed to allege a plausible § 1983 claim against any Defendant.

### 1.    Claims Against the Bureau of Administrative Adjudication

Fullman names the BAA as a Defendant. The BAA, however, is an agency of the City of Philadelphia, and City agencies are not suable entities under § 1983 because they do not have a separate legal existence.[13] *See Vurimindi v. City of Philadelphia*, No. 10-88, 2010 WL 3169610,

---

[13] The BAA is the City's agency responsible for the resolution of parking ticket disputes. See https://www.phila.gov/departments/bureau-of-administrative-adjudication/ (last visited September 29, 2025).

at *1 (E.D. Pa. Aug. 10, 2010) (observing that under 53 Pa. Cons. Stat. § 16257, "no such

department shall be taken to have had . . . a separate corporate existence, and hereafter all suits

growing out of their transaction . . . shall be in the name of the City of Philadelphia"); *Jones v.*

*Philadelphia Parking Auth.,* No. 11-4699, 2013 WL 12156078, at *1 (E.D. Pa. Mar. 27, 2013)

(noting that the plaintiff may not name the City of Philadelphia Parking Violations Branch as a

defendant because they are "'ancillary municipal defendants'" which "'are not legal entities

separate and apart from the City of Philadelphia.'" (quoting *Gremo v. Karlin*, 363 F. Supp. 2d

771, 780 (E.D. Pa. 2005))).  Accordingly, Fullman's claims against the BAA will be dismissed

with prejudice because it is not a proper defendant.

### 2.    Personal Involvement Requirement

Fullman names Steven C. Boc as a Defendant, identifying him as an attorney for the

PPA.  (Compl. at 2.)  Fullman also names Joseph McCarthy as a Defendant, asserting that he is a

PPA employee.  (*Id.*)  Fullman asserts that Boc and others "supported the violation of his

constitutional rights, liberty, and equal protection by failing to dismiss the harassing invalid

parking tickets and continuing to allow the PPA parking enforcement officers" to issue

"harassing invalid parking tickets."  (Id. at 12.)  With respect to McCarthy, Fullman avers that he

sent him "numerous letters and complaints" regarding "ongoing discriminatory parking

practices, discrimination, harassment and retaliatory action, which was to no avail."[14]  (*Id.* at 11.)

---

[14] To the extent Fullman asserts that McCarthy failed to investigate his complaints, any claims
arising therefrom fail because there is no constitutional right to such an investigation.  *See*
*Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (*per curiam*)
("Boseski has no cognizable claim against a government entity for its failure to investigate or
bring criminal charges against another individual."); *Sanders v. Downs*, 420 F. App'x 175, 180
(3d Cir. 2011) (*per curiam*) (dismissing plaintiff's claim that police defendants failed to
adequately investigate thefts at his home, since "[t]here is no statutory or common law right,
much less a constitutional right, to [such] an investigation") (quoting *Fuchs v. Mercer Cnty.,* 260
F. App'x 472, 475 (3d Cir. 2008) (alterations in original; *Lombardo v. Zanelli*, No. 24-1383,

14

These undeveloped and conclusory allegations are insufficient to allege how Defendants Boc and McCarthy were personally involved in causing Fullman to suffer a constitutional injury, rendering any claim against them implausible.

In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (" Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." ) (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (" Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Fullman's claims against Defendants Boc and McCarthy will be dismissed without prejudice.

### 3.    Fifth Amendment Due Process Claim

Fullman does not assert a cognizable Fifth Amendment due process claim.  The Due Process Clause of the Fifth Amendment provides that no person may be "deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V.  However, the Fifth Amendment only applies to the federal government – it does not govern state or municipal officials.  *See Fullman v. City of Philadelphia*, No. 22-4282, 2023 WL 6881040, at *3 (E.D. Pa. Oct. 17, 2023),

---

2024 WL 1743759, at *6 n.7 (E.D. Pa. Apr. 23, 2024) ("Additionally, Lombardo may not bring a due process claim based on his assertion that officers failed to investigate his claim of assault, robbery, and kidnapping.").

*aff'd*, No. 23-3073, 2024 WL 1637550 (3d Cir. Apr. 16, 2024) (citing *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) ("the due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials"). Defendants are state and municipal entities or officials, so the Fifth Amendment does not apply. Fullman's Fifth Amendment claims will be dismissed with prejudice.

### 4.    Fourteenth Amendment Due Process Claim

The Court understands Fullman to assert procedural due process claims under the Fourteenth Amendment, asserting generally throughout his Complaint that he was denied "due process of law." (*See, e.g.*, Compl. at 1, 11-13.) Specifically, he alleges that he was "deprived of liberty without due process of law" (*id.* at 11), the City and PPA denied him "an in person fair hearing on his invalid parking citations" because he is "an African-American male" (*id.* at 13), and his car was wrongfully towed (*id.* at 5). Fullman does not provide any facts describing the circumstances of these claimed violations, including when the alleged violations occurred, how they were unfair or wrongful, or who was personally involved in the alleged violations.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a plausible Fourteenth Amendment due process claim, Fullman must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Rosado v. City of Coatesville*, No. 19-2426, 2020 WL 1508351, at *3 (E.D. Pa. Mar. 30, 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 255, 234 (3d Cir. 2006)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[T]he relevant

inquiry is what process [the plaintiff] received, not whether the state court decided the case

correctly." *Torres v. City of New York through New York City Dep't*, 590 F. Supp. 3d 610, 618

(S.D.N.Y. 2022) (citing *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (*per curiam*)).  "If there is

a process on the books that appears to provide due process, the plaintiff cannot skip that process

and use the federal courts as a means to get back what he wants." *Alvin v. Suzuki*, 227 F.3d 107,

116 (3d Cir. 2000).

Fullman has not alleged a plausible claim of a violation of his procedural due process

rights.  Other than his conclusory statements that his vehicle was "wrongfully towed," and he

was denied "an in person fair hearing," Fullman does not allege any facts tending to demonstrate

a violation of procedural due process.  In fact, it appears from the allegations of the Complaint

that he received all the process he was due.  Fullman received numerous parking tickets between

2019 and 2022, he contested every ticket, and he states that all of them were dismissed in his

favor.[15]  (Compl. at 3-4, 6.)  Accordingly, any Fourteenth Amendment due process claim will be

dismissed.  *See King v. City of Philadelphia*, 654 F. App'x 107, 111 (3d Cir. 2016) (concluding

that the City of Philadelphia's procedures for parking ticket enforcement and adjudication,

---

[15] Moreover, nothing about the issuance of parking tickets or having one's car "wrongfully towed," implicates substantive due process.  While unpleasant and disruptive, it is not activity that "shocks the conscience."  The elements of a substantive due process claim are that: (i) defendants acted under color of law; (ii) a protected property or liberty interest was at stake; (iii) the defendants had a duty of care toward the plaintiff; and (iv) a deprivation within the meaning of the due process clause occurred.  *Roberts v. Mentzer*, 382 F. App'x 158, 166 (3d Cir. 2010) (citing *Fagan v. City of Vineland*, 22 F.3d 1296, 1310 (3d Cir. 1994)).  To support a plausible substantive due process claim, the government conduct must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Id.* (citing *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006)).  "The 'shocks the conscience' standard encompasses 'only the most egregious official conduct.'"  *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  "[M]erely alleging an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision."  *Toll Bros. v. Twp. of Moorestown*, No. 10-4843, 2011 WL 2559507, at *8 (D.N.J. June 27, 2011) (citing *United Artists*, 316 F.3d at 402).

"which provides ample notice and multiple opportunities for both administrative agency and state court review of disputed parking violations[,] satisfy the requirements of due process"); *see also Tate v. D.C.*, 627 F.3d 904, 908-09 (D.C. Cir. 2010) (concluding that because plaintiff had notice of parking tickets and "hearings to contest them," her due process rights were not violated); *Jones v. Philadelphia Parking Auth.*, No. 11-4699, 2013 WL 12156078, at *1 n.1 (E.D. Pa. Mar. 27, 2013) (noting that "there is no constitutional or statutory right to park one's car wherever one wants" and denying leave to file an amended complaint against the PPA based on "exhibits to proposed amended complaint indicating that Mr. Jones received notice and a hearing" (first quoting *Int'l Union of Operating Eng'rs, Local 150 v. Vill. of Orland Park*, 139 F. Supp. 2d 950, 960-61 (N.D. Ill. 2001), then citing *Tate*, 627 F.3d at 908))).

### 5. Fourteenth Amendment Equal Protection Claim

Fullman contends that he was denied access to handicap parking, harassed and discriminated against because of his membership "in a protected class (age, color, disability, and race)." (Compl. at 1.)  Fullman alleges he was "wrongfully issued" parking tickets between February 2019 and June 2022 "for discriminatory reasons" on account of his race.  (*Id.* at 2-4, 6.) He further avers that the City, PPA, and BAA "allowed the harassing invalid tickets to continue for retaliatory reasons and because of [his] race (black)."  (*Id.* at 3-4, 6.)

Between January 2022 and February 9, 2024, Fullman observed several vehicles that he avers were parked illegally in a handicapped area that were either not issued a parking citation or were issued a parking citation but not towed.  (*Id.* at 5, 7, 9-11.)  Even though Fullman concedes that he did not observe the drivers of most of the vehicles in question, he nonetheless asserts that those individuals were "not in [his] protected class (race, color, and disability)" and were "treated differently, better, and more favorably than [him] which constitutes a constitutional

violation." (*See*, *e.g.*, *id.* at 5; *see also id.* at 7, 9-11.) He avers generally that he reported the "discriminatory parking practices to Defendants, PPA and BAA, which was to no avail." (*Id.* at 4.) Based on these allegations, Fullman asserts that his rights to equal protection were violated.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal protection violation, a plaintiff must allege facts to show it is plausible that he was treated differently than other similarly situated persons, and that this different treatment was the result of intentional discrimination based on his membership in a protected class. *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are similarly situated under the Equal Protection Clause when 'they are alike in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008). Additionally, to state a race-based equal protection claim, a plaintiff must allege that defendants were motivated by racial animus. *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir. 1986)).

Fullman alleges that he is a member of a racial minority, but his assertions that he received parking tickets solely because of his race or that parking tickets were prompted solely by an intention to discriminate against him are entirely conclusory and speculative. Fullman alleges no facts in the Complaint that raise a plausible inference that any Defendant, or any unnamed parking enforcement officers for that matter, purposefully discriminated against him on the basis of his race. In fact, there are no allegations that any Defendants were aware of his membership in a racial minority, or that said Defendants discriminated against him on that basis,

especially since parking citations are generally issued to a vehicle as opposed to a driver.  *See*

*Kelly v. Rice*, 375 F.Supp.2d 203, 210 (S.D.N.Y. 2005) (plaintiff failed to allege a denial of equal

protection when officer who decided to ticket her car could not possibly have known who the

owner was or owner's race).  He fails to allege any plausible basis by which any of parking

enforcement officers that wrote him tickets could have known he was a member of a racial

minority while doing so.

Fullman offers only conclusory assertions of discrimination, that he was "wrongfully

issued" parking tickets "for discriminatory reasons" on account of his race while other vehicles

were not ticketed or towed.  (Compl. at 2-5, 6-7, 9-11.)  Fullman's conclusory statements of race

discrimination are not sufficient to meet his pleading burden.  *Children's Health Def., Inc. v.*

*Rutgers, the State Univ. of N.J.*, 93 F.4th 66, 84 (3d Cir. 2024) (stating that to plead a successful

equal protection claim, the plaintiff "must offer more than conclusory assertions").  Moreover,

Fullman has not alleged that he was treated differently than similarly situated individuals who

were not in his protected class, which is fatal to his equal protection claims premised on race

discrimination.  *See, e.g.*, *Tucker v. City of Philadelphia*, No. 16-3104, 2017 WL 5010032, at *2

(E.D. Pa. Nov. 2, 2017) (dismissing race discrimination equal protection claims against police

officers where the plaintiff did not allege any facts about similarly situated individuals outside of

the protected class).

### 6.    First Amendment Retaliation Claim

Fullman asserts that he was harassed and discriminated against in retaliation for his

"exercise of protected activity."  (Compl. at 12.)  He avers that he sent "numerous letters and

complaints" to Defendant McCarthy "regarding ongoing discriminatory parking practices,

discrimination, harassment and retaliatory action, which was to no avail."  (*Id.* at 11.)  Fullman

claims that his filing of "citizen's complaints" about "invalid parking citations, discrimination, harassment, and retaliation for parking in reserved handicap areas" was "one of the motivating reasons" why he "was continuously harassed with invalid parking citations." (*Id.* at 1, 11, 12.) He contends that the "harassment, discrimination, and retaliation" became "much worse" after he sent "numerous complaints." (*Id.* at 11.)

To state a plausible First Amendment retaliation claim, Fullman must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 553 (E.D. Pa. 2013) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016); *see also Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, [] conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation.").

Fullman's factual allegations are far too vague and generalized to state a retaliation claim against any named Defendant. Fullman collectively refers to the City and the PPA as engaging in conduct "for retaliatory reasons" without clarifying the specific basis for any individual Defendant's liability (*see, e.g.*, Compl. at 1-4, 6, 11-13). This is not sufficient to state a claim. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant

engaged in the specific conduct alleged by the plaintiff).  In fact, Fullman does not identify any

individually named Defendants who were personally involved in retaliatory action.  *See Rode*,

845 F.2d at 1207; *Dooley*, 957 F.3d at 374.  Although Fullman avers that he sent "numerous

letters and complaints" to Defendant McCarthy, there are no allegations that McCarthy was

personally involved in any acts of retaliation against Fullman, much less that McCarthy was

somehow responsible for the issuance of any "invalid parking citations."  (Compl. at 1, 11, 12.)

        Fullman also fails to establish a causal link between the alleged protected activity – his

filing of citizen's complaints – and any adverse action as a result thereof.  Simply stated,

Fullman does not provide any details about when he filed those citizen complaints, what specific

conduct they concerned, and whether any other Defendant was aware of those complaints.

Fullman's allegations that he was somehow retaliated against by making "citizen's complaints"

is simply too tenuous to establish a causal connection for the alleged conduct.  *See Iqbal*, 556

U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's

liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"

(internal quotations omitted)); *Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not

nudged their claims across the line from conceivable to plausible, their complaint must be

dismissed.").  There are no specific facts linking his filing of citizen complaints with any

retaliatory action.  *See Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting

facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a

cause-and-effect relationship between specific protected activities and a later adverse action are

insufficient to plead causation.").  In sum, Fullman's allegations fall far short of stating a

plausible retaliation claim against any of the Defendants.  *See generally Iqbal*, 556 U.S. at 678

(explaining that legal conclusions and "unadorned, the-defendant[s]-unlawfully-harmed-me

accusation[s]" are insufficient to state a claim). Accordingly, the Court will dismiss Fullman's

First Amendment claims.

### 7.    Municipal Liability

Fullman names the City and the PPA as Defendants. To plead a basis for municipal

liability under § 1983, Fullman must allege that a City or PPA policy or custom caused the

violation of his constitutional rights.[16] *See Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694

(1978); *King v. Philadelphia Parking Auth.*, 97 F. Supp. 3d 649, 653-57 (E.D. Pa. 2015)

(analyzing claims against the PPA as municipal liability claims under *Monell*), *aff'd sub nom.*

*King v. City of Philadelphia*, 654 F. App'x 107 (3d Cir. 2016). A plaintiff may also state a basis

for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts

showing] that said failure amounts to deliberate indifference to the constitutional rights of those

affected."[17] *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "To satisfy the pleading

standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v.*

---

[16] "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

[17] "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest*, 930 F.3d at 106. "Ordinarily, this requires a plaintiff to identify a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (internal quotations omitted). "Otherwise, the plaintiff needs to show that failure to provide the identified training would likely result in the violation of constitutional rights — *i.e.*, to show that the need for more or different training was so obvious." *Id.* (internal quotations and alterations omitted).

*City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a claim against the City or the PPA. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." ) (citing cases).

Fullman's *Monell* claims, as pled, are based on allegations that are vague, generalized, and conclusory. Specifically, with respect to the City and the PPA, Fullman repeatedly asserts in conclusory terms only that they are "responsible for the violations of [his] constitutional rights" because of their "deliberate indifference to a custom, pattern, practice, or policy of allowing PPA and City employees to harass, retaliate and discriminate against minority individuals for their expressive conduct in observing and reporting misconduct, filing complaints, among other things, and/or a deliberate indifferent failure to train, supervise, and discipline officers, PPA and BAA employees who engage in such conduct." (Compl. at 13, *see also id.* at 3, 12.)

Fullman does not identify any City or PPA policy or custom that caused the alleged constitutional violations. Nor does he describe a pattern of constitutional violations or an obvious need for training or supervision that supports a plausible inference that the City or the PPA violated his constitutional rights. Fullman's conclusory allegations that the City and the PPA somehow violated his constitutional rights by virtue of the actions of their respective employees is not sufficient. *See, e.g.*, *Phillips v. Northampton Cnty.*, 687 F. App'x 129, 132 (3d Cir. 2017) (affirming dismissal of *Monell* claims where the complaint contained "wholly conclusory and highly generalized assertions about unspecified patterns of misconduct" based on "no facts to support the existence of any policy, custom, or practice beyond those involving [the plaintiff's own [experiences]"); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d

Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim under *Monell*); *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) ("These conclusory allegations, which merely parrot the standard of liability, are insufficient to state a claim for § 1983 liability under Monell"), *aff'd*, 756 F. App'x 165 (3d Cir. 2018). Moreover, because Fullman has not adequately pled a plausible underlying constitutional violation, there is no basis for a Monell claim against the City of the PPA. *See Mulholland v. Gov't Cnty. of Berks, Pa*., 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.") (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . ., it is inconceivable that [the municipality] could be liable")).

## IV.    CONCLUSION

For the reasons stated, Fullman's Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. His claims against the BAA and any claims based on 42 U.S.C. § 1981 and the Fifth Amendment will be dismissed with prejudice. The balance of Fullman's claims will be dismissed without prejudice and with leave to file an amended complaint. An order follows with additional information on amendment.

BY THE COURT:

S/WENDY BEETLESTONE

_____

WENDY BEETLESTONE, C.J.