IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW FULLMAN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-0682** |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.*, | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**BEETLESTONE, C.J.**                                                                                  **MARCH  16, 2026**

In a prior Memorandum and Order, the Court granted Andrew Fullman leave to proceed *in forma pauperis* and dismissed his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  *Fullman v. City of Philadelphia*, No. 24-0682, 2025 WL 2825586, at *1 (E.D. Pa. Oct. 2, 2025) ("the October Memorandum"); *see also* ECF Nos. 34 & 35.  Fullman was permitted an opportunity to file an amended complaint, and he returned with an Amended Complaint ("AC") on November 24, 2025, naming the following Defendants: the City of Philadelphia, Philadelphia Parking Authority ("PPA"), Joseph McCarthy, Rich Lazer, Lynette M. Brown-Sow, and Police Officer John Doe.  (*See* AC (ECF No. 40) at 1.)  For the following reasons, the AC will be dismissed in its entirety.

## I.      PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS[1]

Fullman's initial Complaint asserted violations of his civil rights and discriminatory parking practices against the City, PPA, Bureau of Administrative Adjudication ("BAA"), two PPA employees, an unidentified City employee, and several unidentified PPD officers.  (Compl.

---

[1] Unless otherwise indicated, the factual allegations set forth in this Memorandum are taken from Fullman's AC.  (ECF No. 40).  The Court adopts the pagination assigned by the CM/ECF docketing system.  Grammar, spelling, and punctuation errors in quoted material are cleaned up where necessary.

(ECF No. 2) at 1-2.)  Fullman alleged that he was denied access to handicapped parking and was harassed and discriminated against by Defendants in retaliation for making parking complaints, and on account of his membership in protected classes based on age, color, disability, and race. (*Id.* at 1.)  He averred that the PPA and Philadelphia Police Department ("PPD") issued him at least nine "invalid" parking tickets between 2019 and 2022 "for retaliatory and discriminatory reasons," and those tickets were later dismissed in his favor.  (*Id.* at 3-4, 6.)

Fullman cited numerous instances alleging that he was denied access to handicap parking because a driver "knowingly parked" their vehicle in a handicap parking area even though the vehicle did not display a handicap placard or a plate.  (*Id.* at 5-7, 9-11.)  Fullman maintained that some of these drivers were PPD officers or City employees, and although he reported each instance, the PPA did not issue any parking violations or tow the offending vehicles.  (*Id.* at 5-11.)  Fullman contended that these drivers were treated differently, and more favorably than him, constituting discrimination.  (*Id.*)  Fullman also asserted a *Monell* claim against the City, alleging that it was "responsible for the violations of [his] constitutional rights because the individual Defendants' actions resulted from the City's deliberate indifference to a custom pattern, practice, or policy of allowing PPA employees to retaliate against individuals for their expressive conduct in reporting employees undertaking their official duties, by, among other things, unlawfully issuing invalid parking tickets and/or a deliberately indifferent failure to train, supervise, and discipline parking enforcement officers who engage in such conduct."  (*Id.* at 3.)

In the October Memorandum, the Court liberally construed the Complaint as asserting due process, equal protection, and retaliation claims.  *See* October Memorandum, 2025 WL 2825586, at *4.  The Court also construed the Complaint as asserting a claim pursuant to the

2

Americans with Disabilities Act ("ADA") based on Fullman's allegation that he "requested a reasonable accommodation" to park closer to his residence. *Id.* at *5.

The Court concluded that Fullman failed to state a plausible ADA discrimination claim because he did not adequately allege that he suffers from a disability or that a public entity failed to accommodate any disability or discriminated against him because of it. *Id.* at *5-6. Also, to the extent that Fullman alleged that any individually named Defendants somehow denied him access to handicapped parking areas, those claims were dismissed with prejudice because Title II of the ADA does not provide for individual liability. *Id.* at *6.

The Court dismissed Fullman's constitutional claims against PPA employees Steven C. Boc and Joseph McCarthy because Fullman failed to assert how they were personally involved in any alleged constitutional injury. *Id.* at *7-8. Fullman's Fourteenth Amendment due process claims were dismissed because there were no factual allegations that demonstrated a violation of procedural or substantive due process. *Id.* at *9. Rather, it appeared from the allegations of the Complaint that Fullman received all the process that was due because all the parking tickets he allegedly received between 2019 and 2022 were dismissed in his favor. *Id.* With respect to his Fourteenth Amendment equal protection claim, Fullman offered only conclusory and speculative assertions that the parking tickets issued against him were prompted solely by an intention to discriminate. *Id.* at *9-10. The Court determined that there were no allegations that any of the Defendants were aware of Fullman's membership in a racial minority, or that the Defendants discriminated against him on that basis. *Id.* at *10. The Court also dismissed Fullman's First Amendment retaliation claims because his allegations were too vague and generalized to state a retaliation claim against any named Defendant and because he also failed to establish a causal link between the alleged protected activity and any adverse action as a result thereof. *Id.* at *11.

Finally, the Court found that Fullman failed to plausibly allege a *Monell* claim against the City or the PPA. *Id.* at *12. Fullman's Complaint was dismissed in its entirety,[2] and he was provided an opportunity to file an amended complaint as to any claims dismissed without prejudice. *Id.* at *13; *see also* ECF No. 35.

Fullman has returned with an Amended Complaint, reasserting claims of "harassment, discrimination, and retaliation for complaining of discriminatory parking practices." (AC at ¶ 1.) The AC is lengthy, repetitive, and once again replete with conclusory legal verbiage.[3] Fullman asserts that he is "a sixty (60) year old handicapped male with a PPA Zone 10 parking permit" for which he pays an annual fee, but claims that "most of the time, there is no available parking due to the negligence" of the City and the PPA "to enforce the laws." (*Id.* at ¶ 25.) He claims that "[t]here are numerous vehicles parked illegally in Zone 10" and "[t]he unavailability of parking in Zone 10 has caused [him] to spend additional money to park elsewhere." (*Id.*) He allegedly "has paid hundreds of dollars" because of ongoing harassment and "retaliatory parking citations and tows." (*Id.*)

---

[2] The Court also concluded that to the extent Fullman alleged discrimination pursuant to 42 U.S.C. § 1981, his claims were dismissed with prejudice because 42 U.S.C. § 1983, as opposed to § 1981, provides the exclusive remedy against state actors. *See* October Memorandum, 2025 WL 2825586, at *5. The Court also dismissed Fullman's claims against the BAA with prejudice because it is not a suable entity under § 1983. *Id.* at *7. Fullman's Fifth Amendment due process claim was also dismissed with prejudice because the Fifth Amendment only applies to the federal government, and the Defendants named in the initial Complaint were state and municipal entities or officials. *Id.* at *8.

[3] Passing references to legal provisions are insufficient to bring a plausible claim before the Court. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("A passing reference to an issue will not suffice to bring that issue before this court.") (cleaned up) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).

4

Fullman claims that he filed "PPA Citizen's Complaints" on August 3, 2020, August 5, 2020, September 24, 2020, and November 18, 2020, alleging "harassment and discriminatory parking practices." (*Id.* at ¶ 74.) Fullman also asserts that he sent PPA employee McCarthy "numerous letters and complaints" regarding "ongoing discriminatory parking practices, discrimination, harassment and retaliatory actions, which was to no avail." (*Id.* at ¶ 65.) Fullman maintains that the PPA "began to harass and retaliate against [him] immediately after he sent the said letters and complaints of discrimination." (*Id.*)

Fullman contends that a "$301 invalid parking citation" was issued by a PPA parking enforcement officer on November 1, 2020, while Fullman's vehicle was parked in a reserved handicap parking space with his handicap placard hanging from the sun visor. (*Id.* at ¶ 75.) He avers that his car was also towed on that date. (*Id.*) When Fullman arrived at the impound lot to retrieve his car, a PPA employee allegedly told him that even though "they noticed his HP Parking Placard hanging in the windshield after the car arrived at the Impound Lot," he had to pay a $175 towing fee to retrieve his car. (*Id.*) Fullman claims that the "invalid ticket was reversed," but he had to spend "a lot of time fighting it." (*Id.*) Fullman's car was also towed on April 18, 2021, allegedly "after PPA enforcement hours." (*Id.* at ¶ 76.) A different PPA employee allegedly told Fullman that although they "notice[d] his HP Parking Placard" after the car arrived at the impound lot, he still had to pay $327 to get his car. (*Id.*)

Fullman avers that the PPA retaliated against him on June 7, 2022, by issuing an "invalid" parking citation even though he was "legally parked in a reserved handicap only parking area with his [handicap placard] visible." (*Id.* at ¶ 30.) He contends that his "guaranteed one (1) full hour of free parking" was refused. (*Id.*) He alleges that "PPA is

aware of their faulty scanning device which continues to time a vehicle after the vehicle leaves," and he claims that the parking ticket was issued with the intent to make him "spend time and money contesting" the invalid parking ticket. (*Id.*) The ticket was dismissed in his favor several months later. (*Id.*) On October 12, 2022, and January 23, 2023, Fullman allegedly sent "Cease and Desist Letter[s]" to the BAA, advising the BAA to stop harassing him for payment of parking citations issued in April 2022 because those citations were "pending appeal" in the Philadelphia County Court of Common Pleas. (*Id.* at ¶¶ 12, 28, 35.)

As in his initial Complaint, Fullman describes several instances in his AC when he was denied access to handicap parking because a driver "illegally" parked their vehicle in a handicap parking area even though the vehicle did not display a handicap parking placard or a handicap license plate.[4] (*Id.* at ¶¶ 26, 32, 40-44, 46, 48-50, 54-56, 59-60, 62.) Fullman reported the parking violation in each instance, but the PPA did not issue a parking violation or tow the offending vehicle. (*Id.*) He avers that in several of these instances, the "PPA parking enforcement officer" did not request that the driver move the vehicle, but, instead, permitted the driver to stay, continuing to block his access to handicap parking. (*Id.* at ¶¶ 26, 43-44, 46, 54, 56, 59-60.) Fullman contends that the parking enforcement officers "violated state, local, and federal law in failing and refusing to issue" parking tickets for illegally parked vehicles.[5] (*Id.* at

---

[4] Fullman indicates that he observed these vehicles on January 20, 2022, August 15, 2022, October 7, 2023, October 22, 2023, October 24, 2023, November 15, 2023, November 19, 2023, December 25, 2023, February 1, 2024, February 10, 2024, February 14, 2024, February 19, 2024, March 8, 2024, and November 19, 2025. (AC at ¶¶ 26, 32, 40-44, 46, 48-50, 54-56, 59-60.)

[5] To the extent Fullman seeks the issuance of parking citations based on his observations that vehicles were "illegally parked," the Court has no authority to order such relief. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another'"); *Ellis v. Berks Cnty. Police Dep't*, 857 F. App'x 104, 106 n.6 (3d Cir. 2021) (*per curiam*) ("The defendants could not violate Ellis's

¶ 32.)  Although it appears from the allegations of the AC that Fullman did not see every driver that allegedly parked in a handicapped area,[6] of those he did observe, Fullman maintains that none of them were disabled or members of his "protected class (disability)."  (*Id.* at ¶¶ 26, 43-44, 46, 50, 54-56, 59.)  While Fullman does not explain how he reached this conclusion, particularly as not all disabilities are apparent based solely on another's observation, he nonetheless maintains that these drivers were treated differently, and more favorably than him.  (*Id.* at ¶¶ 26, 43-44, 46, 48, 50, 54-56, 59.)

Fullman also refers to several instances where a driver "illegally parked in a reserved handicap parking space" and was only given a parking citation even though their vehicle was parked in a "tow away zone."[7]  (*Id.* at ¶¶ 27, 51-53, 57-58.)   In each instance, the PPD or PPA allegedly permitted the vehicle to remain "illegally parked."  (*Id.*)  Fullman contends that the drivers, who were mostly Asian or Hispanic, were "outside of [his] protected class (disability)"

---

constitutional rights by declining to prosecute Winston . . . ."); *Grabowsky v. Borough of Whitehall*, 241 A.3d 691 (Pa. Commw. Ct. 2020) (property owner who sought the issuance of citations to neighbors for alleged violations of borough ordinances had no right to dictate the method of enforcement).

[6] In several instances, Fullman does not describe the driver, but instead provides a description of the vehicle and the license plate.  (AC at ¶ 32, 40-42, 48-49.)

[7] Fullman indicates that he observed these vehicles on February 13, 2022, February 1, 2024, February 2, 2024, February 9, 2024, February 20, 2024, and February 22, 2024.  (AC at ¶ 27, 51-53, 57-58.)  On February 13, 2022, Fullman observed a young male driver park his vehicle in a handicap parking area on 800 Arch Street even though his vehicle did not display a handicap placard or plate.  (*Id.* at ¶ 27.)  A parking citation was issued and the "vehicle's front wheels were secured, connected, and raised up to [a] PPA Tow Truck" at the time the driver returned.  (*Id.*)  Once the driver proved ownership, the tow truck operator disconnected his vehicle.  (*Id.*)  Fullman asserts that the driver "was not disabled or in [his] protected class (disability), but was treated differently, better, and more favorably" than him because the vehicle was not towed.  (*Id.*)  Fullman avers that he once had a visible "medical episode when his vehicle was secured and connected to a PPA tow truck," and his vehicle was nonetheless towed away because a different tow truck operator informed him that "once a vehicle is secured and connected to a PPA tow truck, it must be towed away."  (*Id.*)

and "treated differently and more favorably" than him, thereby supporting "his equal protection claims." (*Id.* at ¶¶ 27, 51-52, 57-58.)  Fullman avers that his "handicap status is well known to the PPA, but his car was still towed." (*Id.* at ¶ 53.)  He asserts that despite his complaints, the PPA continues with its "discriminatory parking practices." (*Id.* at ¶¶ 27, 53.)

In addition to the foregoing, Fullman reasserts that from May 8, 2022, through September 10, 2023, he observed five different police vehicles and a City-owned vehicle parked in handicap parking spaces even though the vehicles did not display a handicap placard or plate. (*Id.* at ¶¶ 29, 31, 33-34, 36-37, 39, 47.)  In each of these instances, Fullman contends that none of the vehicles displayed a handicap placard or permit, and his access to reserved handicap parking was blocked. (*Id.*)  He claims that he filed a "Citizen's Complaint" with respect to each occurrence. (*Id.*)  He also alleges that the City "is aware of police blocking access to handicap parking areas" but does nothing because of a "PPD policy, practice, or custom, and/or a deliberately indifferent failure to train, supervise, and discipline officers who engage in such conduct." (*Id.* at ¶¶ 31, 33-34, 36-37.)

Based on the foregoing allegations, Fullman asserts claims pursuant to § 1983, and he also seeks "declaratory and injunctive relief" pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act ("RA"). (*Id.* at ¶¶ 14-15, 163-164.)  He alleges Fourteenth Amendment violations of due process and equal protection, and First Amendment retaliation claims, asserting that the Defendants' actions have caused him to suffer discrimination, harassment, and retaliation. (*Id.* at ¶¶ 72-73.)  He avers that the "years of harassment by the PPA and its employees" have caused him to spend time and money on "invalid, harassing citations." (*Id.* at ¶ 90.)  He maintains that he has been "wrongfully cited for legally parking in reserved handicap parking areas while others outside his protected class (disability and race) were allowed to

8

illegally park and stay parked in reserved handicap areas with hardly any repercussions, parking tickets or tows." (*Id.* at ¶ 91.) As relief for his claims, Fullman seeks monetary damages in excess of $500,000 and injunctive relief.[8] (AC at 21-22.)

## II.    STANDARD OF REVIEW

Because Fullman has been granted leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B) requires the Court to screen and dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the

---

[8] Fullman also seeks certification of a "class of all persons with disabilities or impairments that affect their mobility and parking." (AC at ¶ 162.) A *pro se* litigant who is not an attorney, may not proceed with a case as a class action because he may not represent the interests of other litigants. *See Sinclair v. Citi Mortg., Inc.*, 519 F. App'x 737, 739 (3d Cir. 2013) (*per curiam*) ("[T]he District Court properly declined to treat the Sinclairs' case as a class action, as 'one pro se litigant cannot represent another[.]'") (quoting *Nocula v. UGS Corp.*, 520 F.3d 719, 725 (7th Cir. 2008)); *Ezekoye v. Ocwen Fed. Bank FSB*, 179 F. App'x 111, 113 (3d Cir. 2006) (*per curiam*) ("[A] pro se litigant may not represent the interest of a class in a class action lawsuit."); *see also Caputo v. Fauver*, 800 F. Supp. 168, 169 (D.N.J. 1992), *aff'd*, 995 F.2d 216 (3d Cir. 1993) (collecting cases and stating, "Every court that has considered the issue has held that a prisoner proceeding pro se is inadequate to represent the interests of his fellow inmates in a class action.")

Fullman also seeks a declaratory judgment that his rights have been violated. (AC at ¶¶ 163-164.) As previously explained to Fullman, his requests for declaratory relief are improper because declaratory relief is unavailable to adjudicate past conduct. *See* October Memorandum, 2025 WL 2825586, at *3 n.8; *see also Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

9

Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

The Court construes the allegations of a *pro se* complaint liberally.  *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

10

## III.   DISCUSSION

Liberally construing the AC, the Court understands Fullman to be asserting that he has been subjected to disability discrimination and retaliation.  He also alleges that his due process and equal protection rights have been violated, and he asserts state law claims.

### A.   ADA and RA Claims

Fullman asserts disability discrimination in violation of Title II of the ADA and Section 504 of the RA.  Specifically, he avers that Defendants have violated the ADA by failing to provide "meaningful access to its handicap people rights of way program" because they are "soft on violators" and have permitted "violators to continue parking in reserved handicap parking spaces thus preventing handicap people the right to handicap parking."  (AC at ¶¶ 149-151.)  He also realleges that because he received "harassing and expensive invalid parking citations while parked in reserved handicap parking areas," he "requested a reasonable accommodation to be able to park closer to his place of residence" but was denied.[9]  (*Id.* at ¶ 66.)  Fullman avers that the City and its employees have violated Section 504 of the RA by excluding him on account of his disability from participation in the "benefits and services of Defendant's handicap parking right of way program in Philadelphia."  (*Id.* at ¶ 158.)  He contends that he and "other people in his protected class (disabled)" have been prevented "from parking due to nonhandicap people blocking access to handicap parking."  (*Id.* at ¶ 159.)

"Both [Title II of] the ADA and the RA require public entities . . . to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with

---

[9] The exact same allegation was made by Fullman in his initial Complaint.  (Compl. at ¶ 25.)  As in his initial Complaint, Fullman does not identify the individual or entity to whom he made his request, nor does he allege when the request was made.

disabilities."[10] *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019); *see also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting the phrase "services, programs, or activities" in Title II of the ADA includes recreational, medical, educational, and vocational prison programs).  "[W]hen a plaintiff sues under both the RA and the ADA, [courts] often address both claims in the same breath, construing the provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both statutes, *i.e.*, the general prohibition against discrimination, is materially the same." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (cleaned up).  Although the substantive standards for determining liability under the Rehabilitation Act and the ADA are the same, *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014), a party who seeks to proceed under § 504 "must show that the allegedly discriminating entity receives federal funding." *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020) (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013)); *see also* 29 U.S.C. § 794(a).

To state a plausible claim under either the ADA or the RA, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program,

---

[10] To the extent Fullman alleges that any of the individual Defendants have somehow discriminated against him or denied him access to handicapped parking areas (*see*, *e.g.*, AC at ¶ 116), Title II of the ADA and Section 504 of the RA do not provide for individual liability.  *See Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."); *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals").  Accordingly, any ADA or RA claims against the individual Defendants are dismissed with prejudice.

service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288-89. The plaintiff "must also show intentional discrimination under a deliberate indifference standard [if] he seeks compensatory damages." *Id.* at 289 (footnote omitted). A plaintiff may meet that standard in two ways: "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs, or, second, by alleging facts indicating that [he] could prove that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (internal quotations and alterations omitted).

Fullman avers in conclusory terms only that he has "disabilities within the meaning of the ADA" and "within the meaning of Section 504 relating to accessible parking." (AC at ¶¶ 143, 156.) However, as previously explained to Fullman, to allege plausibly that he is a "qualified individual with a disability," he must provide facts to show that he has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual . . . ." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12101(2)(A). With the passage of the Americans with Disabilities Act Amendments Act ("ADAAA") in 2008, "Congress mandated that the definition of disability shall be construed in favor of broad coverage of individuals to the maximum extent permitted." *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 221 (3d Cir. 2024) (cleaned up). Additionally, the ADAAA requires a "less searching analysis" of

13

whether a plaintiff is "substantially limited." *Kravits v. Shinseki*, No. 10–861, 2012 WL 604169, at *7 (W.D. Pa. Feb. 24, 2012).

Despite the Court's guidance in its October Memorandum, 2025 WL 2825586, at *5, Fullman again has not stated a plausible disability discrimination claim because he has not identified any physical or mental impairment by which he suffers, nor has he explained how such impairment substantially limits one or more of his major life activities. Merely alleging that he is a "handicapped male" who possesses a handicap parking placard (*see* AC at ¶¶ 25, 30, 75-76), does not establish that he is disabled within the meaning of the ADA or RA. *See, e.g.*, *Cottrell v. Rowan Univ.*, 786 F. Supp. 2d 851, 858 (D.N.J. 2011) ("Simply because a person is authorized by law to park in a handicapped space does not mean he is 'disabled' in the context of an ADA . . . discrimination claim."); *Johnson v. Ramada By Wyndham*, No. 24-4024, 2025 WL 1305797, at *3 (D.S.D. May 6, 2025) ("[C]ourts have held that possession of a handicapped parking pass alone may be insufficient to find a plaintiff disabled under the ADA.") (collecting cases); *Brister v. Emp. Opportunity & Training Ctr. of Ne. Pa. Inc.*, No. 22-2047, 2023 WL 4424255, at *2 (M.D. Pa. July 10, 2023) (dismissing ADA claim for failure to accommodate where plaintiff alleged only in conclusory fashion that her employer failed to provide reasonable accommodations for her disability). Again, Fullman has not alleged sufficient facts to show that he is disabled under either the ADA or the RA, and, accordingly, his claims will be dismissed.

## B. Constitutional Claims

Fullman also realleges constitutional claims. The mechanism by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person

acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  As set forth below, Fullman has again failed to allege a plausible § 1983 claim against any Defendant.

### 1.   Fourteenth Amendment Due Process Claims

The Court understands Fullman to assert procedural due process claims under the Fourteenth Amendment, asserting generally that he was "denied due process."[11]  (*See, e.g.*, AC at ¶¶ 72, 96, 110.)  Specifically, he alleges that Defendants deprived him of "his constitutional right to park in a reserved handicap parking area free from harassing and aggressive violators." (*Id.* at ¶ 95.)  He alleges that the "Defendants' misconduct . . . resulted in unjust parking citations while legally parked in reserved handicap parking areas," thereby denying "his constitutional right to fair treatment."  (*Id.* at ¶ 96.)  He asserts a "constitutional right to fair parking."  (*Id.* at ¶ 97.)

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of a liberty or property interest.  As noted in the Court's October Memorandum, to plead a plausible Fourteenth Amendment due process claim, Fullman must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law."  *See* October Memorandum, 2025 WL 2825586, at *8 (citing *Rosado v. City of Coatesville*, No. 19-2426, 2020 WL 1508351, at *3 (E.D. Pa. Mar.

---

[11] Fullman also references the Fourth Amendment, and it appears that he does so with respect to his assertion that his "constitutional right to due process" was denied because the issuance of "fabricated parking citations . . . affected the decision of the hearing examiners and the courts that considered this false evidence."  (AC at ¶¶ 108, 110.)  His allegations concerning the issuance of "fabricated" parking tickets are conclusory and undeveloped.  Notably, Fullman is not specific as to which citations he refers, nor does he explicitly explain why he believes the citations were fabricated or falsely issued.

30, 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 255, 234 (3d Cir. 2006))).  "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).  Due process is not a technical conception with a fixed content unrelated to time, place, and circumstance.  *Gilbert v. Homar,* 520 U.S. 924, 930 (1997).  Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Thus, a deprivation of property should "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted).  But "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (citation omitted).  Rather, due process requires the government to "provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (internal quotation marks and citation omitted).  Pre-deprivation process is not required when the deprivation results from a "random, unauthorized act by a state employee, rather than an established state procedure," and "a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 532-33 (1985) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)).

Fullman has again failed to allege a plausible claim of a violation of his procedural due process rights.  Other than his conclusory statements that he was "denied due process" and his "constitutional right to park in a reserved handicap parking area free from harassing and

16

aggressive violators," Fullman does not allege any facts tending to demonstrate a violation of

procedural due process.  In fact, it appears from the allegations of the AC that he received all the

process he was due.  Fullman asserts that he received parking citations, and his vehicle was

towed on November 1, 2020 and April 18, 2021, but he contested these instances, and the

parking citations were later dismissed in his favor.[12]  (AC at ¶¶ 75-76.)  He refers to two parking

citations, issued on April 22, 2022, but avers that these citations were "properly appealed" and

pending decision.  (*Id.* at ¶ 28.)  Finally, he avers that he received a parking citation on June 7,

2022 (*id.* at ¶ 30), but that citation was contested and dismissed in his favor.[13]  *See Lee v. City of*

*Dallas*, No. 05-226, 2006 WL 8437466, at *6 (N.D. Tex. July 10, 2006) (finding no deprivation

---

[12] Pennsylvania's two-year statute of limitations applies to Fullman's due process claims.  *See* 42
Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  A claim accrues "when a
plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain
relief."  *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted).
Because Fullman initiated this case on February 12, 2024, it is likely that any due process claims
based on the towing of his vehicle in 2020 and 2021 would also be time-barred.

[13] Moreover, nothing about the issuance of parking tickets or having one's car towed, implicates
substantive due process.  *See, e.g., Kelly v. Rice*, 375 F. Supp. 2d 203, 209 (S.D.N.Y. 2005)
("Nothing about the issuance of a parking ticket implicates the rarely-used doctrine of
'substantive due process.'").  To be plausible, this type of due process claim must allege
governmental conduct that "'shocks the conscience,' or interferes with rights 'implicit in the
concept of ordered liberty.'"  *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin
v. California*, 342 U.S. 165, 172 (1952); *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937)).
The United States Supreme Court explained that "the core of the concept" of due process is
"protection against arbitrary action," *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998),
and that "only the most egregious official conduct can be said to be arbitrary in the constitutional
sense" *id*. at 846 (quotation omitted).  Accordingly, in a substantive due process challenge to an
action taken by a government official, "the threshold question is whether the behavior of the
governmental officer is so egregious, so outrageous, that it may fairly be said to shock the
contemporary conscience."  *Id*. at 847 n.8; *see also United Artists Theatre Circuit, Inc. v.
Township of Warrington*, 316 F.3d 392, 399-400 (3d Cir. 2003) ("[O]ur cases have repeatedly
acknowledged that executive action violates substantive due process only when it shocks the
conscience.").  While being issued a parking citation or having one's car towed may be
unpleasant and disruptive, it is not activity that "shocks the conscience."

17

of procedural due process when plaintiffs took advantage of the opportunity to be heard and obtained a dismissal of the parking ticket).

Accordingly, Fullman's due process claims will be dismissed. *See King v. City of Philadelphia*, 654 F. App'x 107, 111 (3d Cir. 2016) (concluding that the City of Philadelphia's procedures for parking ticket enforcement and adjudication, "which provides ample notice and multiple opportunities for both administrative agency and state court review of disputed parking violations[,] satisfy the requirements of due process"); *see also Tate v. District of Columbia*, 627 F.3d 904, 908-09 (D.C. Cir. 2010) (concluding that because plaintiff had notice of parking tickets and "hearings to contest them," her due process rights were not violated); *Jones v. Phila. Parking Auth.*, No. 11-4699, 2013 WL 12156078, at *1 n.1 (E.D. Pa. Mar. 27, 2013) (noting that "there is no constitutional or statutory right to park one's car wherever one wants" and denying leave to file an amended complaint against the PPA based on "exhibits to proposed amended complaint indicating that Mr. Jones received notice and a hearing" (first quoting *Int'l Union of Operating Eng'rs, Local 150 v. Vill. of Orland Park*, 139 F. Supp. 2d 950, 960-61 (N.D. Ill. 2001), then citing *Tate*, 627 F.3d at 908))).  Also, to the extent that Fullman bases any due process claim on his allegation that the City violated provisions of its traffic code by issuing "wrongful" or "invalid parking citations," such a claim would fail because "violations of state or municipal law do not, standing alone, necessarily state constitutional claims under 42 U.S.C. § 1983." *See Jones v. City of Philadelphia*, No. 23-4861, 2024 WL 665340, at *3 (E.D. Pa. Feb. 16, 2024) (quoting *Tate*, 627 F.3d at 909 and *King*, 654 F. App'x at 111).

### 2.  Fourteenth Amendment Equal Protection Claims

Fullman contends that the City and PPA "supported the violations of his constitutional rights and equal protection by allowing similarly situated individuals, not handicap, to park

and block reserved handicap parking spaces." (AC at ¶ 67.)  Fullman avers that between January 2022 and March 2024, he observed several vehicles that were parked illegally in a handicapped area that were either not issued a parking citation or were issued a parking citation but not towed.  (AC at ¶¶ 3, 26, 32, 40-44, 46, 48-50, 54-56, 59.)  Even though Fullman concedes that he did not see all of the drivers of these "illegally parked" vehicles, he maintains that he "observed similar situated individuals in his protected class and individuals outside his protected class treated differently and better than himself."  (*Id.*)  Throughout his AC, Fullman makes conclusory references to equal protection, asserting that others were treated more favorably than him on account of his disability and race.[14]  (*Id.* at ¶¶ 6, 43, 48, 50, 56, 58, 72, 96.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To establish an equal protection violation, a plaintiff must allege facts to show it is plausible that he was treated differently than other similarly situated persons, and that this different treatment was the result of intentional discrimination based on his membership in a protected class.  *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015).  "Persons are similarly situated under the Equal Protection Clause when 'they are alike in all relevant aspects.'"  *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008).  Additionally, to state a race-based equal protection claim, a plaintiff must

---

[14] For example, Fullman alleges that an Asian driver who was "not in Fullman's protected class (disabled), was treated differently, better, and more favorably" because of Fullman's disability and race.  (AC at ¶ 43.)

allege that defendants were motivated by racial animus. *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir. 1986)).

First, Fullman's claims that his equal protection rights have been violated based on his unspecified disability are not plausible. Disability, unlike race, religion, sex, and national origin, is not a suspect classification importing strict scrutiny to a discrimination claim under the Fourteenth Amendment's Equal Protection Clause. *See City of Cleburne*, 473 U.S. at 446; *Smith v. McClendon*, No. 14–6358, 2015 WL 2079689, at *5-6 (E.D. Pa. May 5, 2015) (collecting cases and holding that the plaintiff alleging a disability was not part of a protected class); *see also Audi v. Jenkins*, No. 12-836, 2012 WL 3011704, at *4 (M.D. Pa. July 23, 2012) (finding that disability was not a suspect classification under the Fourteenth Amendment). Accordingly, any claims based on a violation of Fullman's equal protection rights based on his unspecified disability are dismissed.

Fullman also appears to allege discrimination because of race, but he does not specifically identify his race in his AC. However, as with his initial Complaint, his assertions that he received parking tickets solely because of his race or that parking tickets were prompted solely by an intention to discriminate against him on that basis are entirely conclusory and speculative. *See* October Memorandum, 2025 WL 2825586, at *9-10. Fullman again fails to allege any facts that raise a plausible inference that any Defendant, or any other unnamed parking enforcement or police officers for that matter, purposefully discriminated against him because of his race. In fact, there are no allegations that any of the Defendants were aware of his membership in a racial minority when they ticketed his parked vehicle, or that those Defendants

20

discriminated against him on that basis, especially since parking citations are generally placed on a vehicle as opposed to being handed to a driver.

Fullman alleges that he was issued parking citations on November 1, 2020, April 18, 2021, April 22, 2022, and June 7, 2022. (*Id.* at ¶¶ 28, 30, 75-76.) The allegations in the AC indicate that Fullman was away from his vehicle when it was towed by two different PPA employees on November 1, 2020 and April 18, 2021. (*Id.* at ¶¶ 75-76.) With respect to the 2022 parking citations, the AC is silent as to whether Fullman was present in his vehicle when those citations were issued and whether the same or different PPA employees of PPD officers issued those citations. (*Id.* at ¶¶ 28, 30.) In sum, Fullman fails to allege any plausible basis by which any of the parking enforcement or police officers that wrote him tickets could have known he was a member of a racial minority while doing so. *See Melvin v. City of New York*, No. 24-4118, 2025 WL 692126, at *4 (S.D.N.Y. Mar. 4, 2025) (finding that defendants could not have discriminated against plaintiff—nor impermissibly favored other applicants—based on race if they did not know his or any other applicant's race); *Kelly v. Rice*, 375 F. Supp. 2d 203, 210 (S.D.N.Y. 2005) (dismissing selective enforcement claim where the defendant officer "targeted [the plaintiff's] car for attention at a time when he could not possibly have known who the owner of the car was or what the owner's race was"). Accordingly, any claims based on a violation of Fullman's equal protection rights on account of his unspecified race are dismissed.

### 3. First Amendment Retaliation Claims

Fullman avers that he has "endured years" of retaliation for "complaining of discriminatory parking practices within" the PPA, claiming that he has been "continuously harassed with invalid parking citations." (AC at ¶¶ 1, 73, 74.) He contends that his filing of "PPA Citizen's Complaints" on August 3, 2020, August 5, 2020, September 24, 2020, and

21

November 18, 2020, wherein he alleged "harassment and discriminatory parking practices" was a "motivating reason" for the retaliation against him. (*Id.* at ¶ 74.) He also alleges that he sent "numerous letters and complaints" to McCarthy "regarding the ongoing discriminatory parking practices, discrimination, harassment and retaliatory actions, which was to no avail," and the PPA started to retaliate against him immediately thereafter.[15] (*Id.* at ¶ 65.) Fullman avers that his vehicle was towed on November 1, 2020, and April 18, 2021 (*id.* at ¶¶ 25, 50, 61, 75-76), and he received "retaliatory" parking citations on April 22, 2022, and June 7, 2022 (*id.* at ¶¶ 28, 30).[16]

As explained in the Court's October Memorandum, to state a plausible First Amendment retaliation claim, Fullman must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See* October Memorandum, 2025 WL 2825586, at *11 (citing *Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 553 (E.D. Pa. 2013) (quoting *Thomas v. Indep. Township*, 463 F.3d 285, 296 (3d Cir. 2006))). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between

---

[15] Fullman does not specify when he sent complaints to McCarthy, so the Court is unable to discern whether those complaints were made in addition to those in 2020 or whether they are in fact the same complaints.

[16] Fullman also avers that he sent "Cease and Desist Letter[s]" to the BAA on October 12, 2022, and January 23, 2023, advising the BAA to stop harassing him for payment of parking citations issued in April 2022 because those citations were "pending appeal" in the Philadelphia County Court of Common Pleas. (AC at ¶¶ 12, 28, 35.) These letters were sent *after* Fullman received the parking citations he references in the AC as the last one was issued on June 7, 2022. (*Id.* at ¶ 30.) Thus, there is no plausible allegation that these letters were a substantial and motivating factor in the issuance of the citations.

the two for purposes of establishing motivation.  *See Watson v. Rozum*, 834 F.3d 417, 422 (3d

Cir. 2016).

Fullman's factual allegations are again too ambiguous and generalized to state a

retaliation claim against any named Defendant.  He collectively refers to the City and the PPA as

engaging in conduct "for retaliatory reasons" without clarifying the specific basis for any

individual Defendant's liability (*see, e.g.*, AC at ¶¶ 7, 25, 27, 30, 50, 55, 61, 65, 67-68, 70-74,

81, 84).  Specifically, Fullman alleges that the "the PPA targeted [his] car in retaliation for his

complaints," and "Defendant PPA began to harass and retaliate against [him] immediately after

he sent" letters and complaints of discrimination.  (AC at ¶ 50, 65.)  As previously explained to

Fullman, this kind of nonspecific pleading that does not identify a particular Defendant is not

sufficient to state a claim.  *See* October Memorandum, 2025 WL 2825586, at *11 (citing *Lawal*

*v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use

of the word "Defendants" failed to adequately plead which specific defendant engaged in the

specific conduct alleged by the plaintiff)).

Fullman does not identify any individually named Defendants who were personally

involved in the alleged retaliatory action, which is fatal to his claims.  As previously explained to

Fullman, the personal involvement of each defendant in the alleged constitutional violation is a

required element, and, therefore, a plaintiff must allege how each defendant was involved in the

events and occurrences giving rise to the claims.  *See* October Memorandum, 2025 WL 2825586,

at *8 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *Jutrowski v. Township of*

*Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title

notwithstanding, is only liable for his or her own misconduct."); *Dooley v. Wetzel*, 957 F.3d 366,

374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction

23

or of actual knowledge and acquiescence.'"); *Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution")). Although Fullman avers that he sent complaints to Defendant McCarthy, there are no allegations that McCarthy was personally involved in any acts of retaliation against Fullman, much less that McCarthy was somehow responsible for the issuance of any "invalid parking citations." (AC at ¶ 65.)

Fullman also fails to establish a causal link between the alleged protected activity – his filing of citizen's complaints – and any adverse action as a result thereof. Simply stated, Fullman does not provide any details about to whom his complaints were directed (other than McCarthy), what specific conduct the complaints concerned, or whether any other Defendant, or any of the individuals who ticketed or towed his vehicle, were even aware of his complaints. *See, e.g., Fullman v. City of Philadelphia*, No. 23-3073, 2024 WL 1637550, at *2 (3d Cir. Apr. 16, 2024) (*per curiam*). Fullman's allegations that he was somehow retaliated against by making "citizen's complaints" is simply too tenuous to establish a causal connection for the alleged conduct. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." (internal quotations omitted)); *Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). There are no specific facts linking his filing of citizen complaints with any retaliatory action. *See Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and

24

a later adverse action are insufficient to plead causation."). In sum, Fullman's allegations again fall far short of stating a plausible retaliation claim against any of the Defendants. *See generally Iqbal*, 556 U.S. at 678 (explaining that legal conclusions and "unadorned, the-defendant[s]-unlawfully-harmed-me accusation[s]" are insufficient to state a claim). Accordingly, the Court will dismiss Fullman's retaliation claims.

### 4.  Civil Rights Conspiracy

Fullman asserts that after towing his vehicle on November 1, 2020, and April 18, 2021, with a handicap parking placard hanging in the windshield, the "Defendants reached an agreement amongst themselves to still inconvenience [him] by making him pay for the two citations and towing twice even though he was legally parked in a reserved handicap parking area." (AC at ¶120.) He also alleges that "the Defendants, individually, jointly and in conspiracy with each other, fabricated parking citations." (*Id.* at ¶ 108.)

The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under the color of state law.'" *Jutrowski*, 904 F.3d at 294 (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001). The Court has already concluded that Fullman's constitutional claims of due process, equal protection, and retaliation must be dismissed. And, where there is no underlying constitutional violation, a conspiracy claim necessarily fails. *Harvard v. Cesnalis*, 973 F.3d 190, 207-08 (3d Cir. 2020). Accordingly, Fullman's conspiracy claim must be dismissed, as he cannot allege an underlying constitutional

25

violation in connection with the towing of his vehicle or the issuance of parking citations.[17] *See id.*; *see also Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019) (*per curiam*) ("Finally, Talley's claims of . . . conspiracy fail because, as noted by the District Court, there is no underlying constitutional violation.").

### 5. Claims Against PPD Officer John Doe #1

Fullman alleges that on November 15, 2023, Officer John Doe #1 observed a driver who had "illegally" parked her vehicle in a reserved handicap area with the "hazard lights" activated. (AC at ¶ 44.)  The vehicle did not display a handicap parking placard or a handicap license plate. (*Id.*)  Doe allegedly ordered the driver to move her vehicle.  (*Id.*)  The driver did not move her vehicle, and Doe drove away.  (*Id.*)  Fullman claims that "by driving away from a hostile situation involving the abuse of a reserved handicap parking area," Doe caused him "to face a substantial risk of serious harm."  (*Id.* at ¶ 45.)  As pled, the factual allegations do not support Fullman's assertions that the encounter was hostile or that he was at risk simply by requesting parking assistance.  Further, to the extent that Fullman alleges that Doe should somehow be held liable for refusing to issue a parking citation, this does not state a claim.  "An agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).  Accordingly, the claims against Doe will be dismissed.

---

[17] Fullman's conspiracy claims are flawed for other reasons.  He asserts no facts about the alleged conspiracy but instead states in conclusory terms that one existed, which is not sufficient to state a plausible conspiracy claim.  *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) ("[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] bare assertion of conspiracy will not suffice.").  As also noted elsewhere, the claims about the 2020 and 2021 towing incidents are probably untimely.

### 6. Supervisory Liability

Fullman names Joseph McCarthy, Rich Lazer, and Lynette M. Brown-Sow as Defendants in the AC, identifying them as "supervisory defendants." (AC at 1, ¶¶ 23, 113.) However, Fullman has presented no factual allegations against them.[18] Rather, he alleges that the "continued issuances of invalid parking citations . . . were caused by the deliberate indifference and recklessness" of these "supervisory defendants" who "failed to adequately train and supervise . . . PPA parking enforcement officers" with respect to "constitutionally adequate parking enforcement practices." (*Id.* at ¶¶ 113, 115.) He further claims that they knew or should have known of their "subordinates' unconstitutional actions and related conduct." (*Id.* at ¶ 114.) The undeveloped and conclusory allegations of supervisory liability against McCarthy, Lazer, and Brown-Sow are insufficient to allege how they were personally involved in causing Fullman to suffer a constitutional injury.

Supervisors can only be found liable for the unconstitutional acts undertaken by their subordinates in two scenarios. First, a supervisor may be liable if he or she, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom, which

---

[18] The only factual allegation against any of these Defendants is Fullman's assertion that he sent letters to McCarthy regarding "discriminatory parking practices, discrimination, harassment and retaliatory actions," but McCarthy did not respond.[18] (*Id.* at ¶ 65.) To the extent Fullman alleges that McCarthy failed to investigate his complaints, any claims arising from the failure are not plausible because there is no constitutional right to such an investigation. *See Boseski v. North Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (*per curiam*) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."); *Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011) (*per curiam*) (dismissing plaintiff's claim that police defendants failed to adequately investigate thefts at his home, since "[t]here is no statutory or common law right, much less a constitutional right, to [such] an investigation") (quoting *Fuchs v. Mercer County,* 260 F. App'x 472, 475 (3d Cir. 2008) (*per curiam*) (alterations in original; *Lombardo v. Zanelli*, No. 24-1383, 2024 WL 1743759, at *6 n.7 (E.D. Pa. Apr. 23, 2024) ("Additionally, Lombardo may not bring a due process claim based on his assertion that officers failed to investigate his claim of assault, robbery, and kidnapping.").

directly caused [the] constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316

(3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015) (quoting

*A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)

(alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she

participated in violating the plaintiff's rights, directed others to violate them, or, as the person in

charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

"Failure to" claims, such as a failure to train, failure to discipline, or failure to supervise, are

generally considered a subcategory of policy or practice liability. *Id.* at 316-17.

Fullman's sole conclusory assertion that McCarthy, Lazer, and Brown-Sow are liable due

to their "failure adequately train and supervise" parking enforcement officers is not sufficient to

state a plausible claim.  *See Iqbal*, 556 U.S. at 678; *see, e.g., Muhammad v. Piston*, No. 25-5971,

2026 WL 125916, at *4 (E.D. Pa. Jan. 15, 2026) ("Muhammad's sole conclusory assertion that

Terra, Kertes, and Dusel are liable due to their "failure to supervise" corrections officers is not

sufficient to state a plausible claim.").  Generalized allegations that a supervisory defendant is

"in charge of" or "responsible for" an office or facility are insufficient to allege personal

involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48

(3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies

that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that

their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of

his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir.

2005)); *Zigler v. Warren*, No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In

simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely

because he is a supervisor.").  Liability under § 1983 also cannot be predicated on a *respondeat*

*superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28, 2022) (*per curiam*). Therefore, the supervisory liability claims are also dismissed.

### 7. Municipal Liability

Finally, Fullman's attempt at alleging municipal liability once again fails. His claims are based on allegations that are vague, generalized, and conclusory. He contends that the City and the PPA are "responsible for the violations of [his] constitutional rights because the individual Defendants' actions resulted from the City's deliberate indifference to a custom, pattern, practice, or policy of allowing City employees to retaliate against individuals for their expressive conduct in filing complaints . . ., among other things and/or a deliberately indifferent failure to train, supervise, and discipline officers who engage in such conduct." (AC at ¶¶ 20, 67, 71.)

A municipality, however, is not vicariously liable under § 1983 for the actions of its employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (Local governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts.") (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see also Phillips v. Northampton County*, 687 F. App'x 129, 132 (3d Cir. 2017) (affirming dismissal of municipal liability claims where the complaint contained "wholly conclusory and highly generalized assertions about unspecified patterns of misconduct" based on "no facts to support the existence of any policy, custom, or practice beyond those involving [the plaintiff's] own [experiences]").

Rather, to plead a basis for municipal liability under § 1983, as the Court has previously explained, Fullman must allege that a City policy or custom caused the violation of his constitutional rights. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). "To satisfy

the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009); .  Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a claim against the City.  *Id.* at 659; *see also Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim under *Monell*); *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) ("These conclusory allegations, which merely parrot the standard of liability, are insufficient to state a claim for § 1983 liability under Monell"), *aff'd*, 756 F. App'x 165 (3d Cir. 2018).  Moreover, because Fullman has not adequately pled a plausible underlying constitutional violation, there is no basis for a *Monell* claim against the City or the PPA.  *See Mulholland v. Gov't Cnty. of Berks, Pa*., 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.") (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . ., it is inconceivable that [the municipality] could be liable")); *Fullman*, 2024 WL 1637550, at *3.

## IV.    CONCLUSION

In sum, after being put on notice of the legal requirements necessary for pleading a claim, Fullman has failed to plead any plausible basis for disability discrimination or a constitutional violation.[19]  Accordingly, the Court will dismiss Fullman's AC with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court concludes that further attempts at amendment would be futile.  *See Posey v. Klinefelter*, No. 25-1428, 2025 WL 1937084, at *2 (3d

---

[19] Having dismissed all of Fullman's federal claims, the Court will not exercise supplemental jurisdiction and will dismiss his state claims for lack of subject matter jurisdiction since there is no diversity of citizenship.  28 U.S.C. § 1332(a).

Cir. July 15, 2025) (*per curiam*) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them.") (quoting *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) (*per curiam*); *Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"); *Robinson v. Delbalso*, No. 22-2378, slip op. at 5 (3d. Cir. Nov. 28, 2022) (*per curiam*) ("[B]ecause Robinson has had two opportunities to amend his complaint, declining to grant further leave to amend was proper.").

An appropriate Order dismissing this case will be entered separately.  *See* Fed. R. Civ. P. 58(a).

BY THE COURT:

S/ WENDY BEETLESTONE

WENDY BEETLESTONE, C.J.

31